## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

MICHAEL DEAN HAMILTON, JOSEPH
RAYMOND HAMILTON, and ANTHONY
HAMILTON, and MICHAEL DEAN
HAMILTON, Executor of the Estate and          Cause No.: 4:10-CV-00712
Personal Representative of  KENNETH
HAMITLON

    Plaintiffs,

v.

CITY OF OVERLAND, MISSOURI,


And

MIKE SCHNEIDER, MAYOR
(Serve:  2650 Chaucher Ave,
       Overland, MO 63114)

And

MIKE LAWS, CHIEF OF POLICE,
(Serve:  2410 Gooddale Ave.
       Overland, MO 63114)

And

JERRY MAY, COUNCIL MEMBER,
(Serve:  9423 Everman
       Overland, MO 63114)

And

PHIL PAUL, COUNCIL MEMBER,
(Serve:  2365 Wallis
       Overland, MO 63114)

And

MARY BETH CONLON, COUNCIL
MEMBER,
(Serve: 8933 Argyl
      Overland, MO 63114)

And
LISA RIDOLFI, COUNCIL MEMBER
(Serve: 1905 Hurstgreen Drive
      Overland, MO 63114)

And

PEGGY KELLER, COUNCIL MEMBER,
(Serve: 9512 Minerva
      Overland, MO 63114)

And

KENNETH OWENSBY, COUNCIL
MEMBER,
(Serve: 9703 Theodosia
      Overland, MO 63114)

And

TIM JONES, COUNCIL MEMBER,
(Serve: 10000 Thorpe Ave
      Overland, MO 63114)

And

LESTER DILLS, COUNCIL MEMBER,
(Serve: 2408 Pebble Beach
      Overland, MO 63114)

And

ANDREW THOMAS RINGEISEN,
POLICE OFFICER,

And

MICHAEL OAKES, POLICE OFFICER,
(Serve: 10432 Calarendon Ave
          Overland, MO 63114)


And

JOSEPH STEVENS, POLICE OFFICER
(Serve: 735 Lexington Park
          Florissant, MO 63031)


          Defendants.

## SECOND AMENDED COMPLAINT

COME NOW Plaintiffs Michael Hamilton, Joseph Hamilton, Anthony Hamilton, and Patricia Weaver, by and through counsel, and for their Second Amended Complaint against Defendants state as follows:


## General Allegations

1.     This court has personal jurisdiction over Defendants, as Defendants are residents and citizens of the Eastern Division of the Eastern District of the State of Missouri.

2.     Plaintiffs Michael Hamilton, Joseph Hamilton, Anthony Hamilton, and Patricia Weaver are the surviving siblings of Kenneth Hamilton ("Decedent").

3.     Plaintiffs' decedent has no surviving parents or children.

4.     Plaintiffs bring this action on behalf of all entitled to recover under Mo. Rev.Stat. §537.080, et. seq., which is commonly referred to as The Missouri Wrongful Death Statute.

5.     This action is also brought for general and punitive damages under 42 U.S.C. §1983 and for equitable relief under 28 U.S.C. §§2201 and 2202, and for the award of costs and attorney's fees under 42 U.S.C. Section 1988,  in regards to violations by Defendants of rights of the Plaintiffs secured by the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.  Attorney's fees and costs are also sought pursuant to 42 U.S.C §1988.

6.     Plaintiff Michael Hamilton has been appointed as the Administrator and Personal Representative of the Estate of Kenneth Hamilton by the Probate Court, St. Louis County, Missouri, and brings this action on behalf of Kenneth Hamilton for all available claims and remedies available to him before his death.

7.     Defendant City of Overland is a Third Class/A City and is a municipality incorporated, organized and existing under the laws of the State of Missouri.

8.     At all times pertinent herein, defendant Mike Schneider was the Mayor of the City of Overland and was a policy maker for the City of Overland Police Department.  Defendant Schneider owed a legal duty to carry out his official duties as Mayor in a manner that did not harm and damage the public, and to exercise appropriate supervision, management and control over the City of Overland Police Department and to insure that the officers of the City of Overland Police Department were properly trained, managed and supervised.  Mayor Schneider is sued in his official and individual capacities.

9.     At all times pertinent herein, defendant Mike Laws was the Chief of Police of the City of Overland Police Department and was a policy maker for the City of Overland Police Department.  Defendant Laws owed a legal duty to carry out his official duties as Chief of Police in a manner that did not harm and damage the public and to exercise appropriate supervision, management and control over the City of Overland Police Department and to insure that the officers of the City of Overland Police Department were properly trained, managed and supervised.  Chief Laws is sued in his official and individual capacities.

10.    Defendants May, Paul, Conlon, Ridolfi, Keller, Owensby, Jones and Dills are the duly elected Members of the City of Overland City Council and were policy makers for the City of Overland Police Department.  Defendants May, Paul, Conlon, Ridolfi, Keller, Owensby, Jones and Dills owed a legal duty to carry out their official duties as the City Council for the City of Overland in a manner that did not harm and damage the public and to exercise appropriate supervision, management and control over the City of Overland Police Department, and to insure that the officers of the City of Overland Police Department were properly trained, managed and supervised. Defendants May, Paul, Conlon, Ridolfi, Keller, Owensby, Jones and Dills are sued in their official and individual capacities.

11.    At all times pertinent herein, defendant Officer Andrew Ringeisen was a duly appointed and acting Public Safety Officer of the City of Overland Police Department, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Missouri and/or City of Overland.

12.    At all times pertinent herein, defendant Officer Michael Oakes was a duly appointed and acting Public Safety Officer of the City of Overland Police Department, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Missouri and/or City of Overland

13.    At all times pertinent herein, defendant Officer Joseph Stevens was a duly appointed and acting Public Safety Officer of the City of Overland Police Department, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Missouri and/or City of Overland

14.    At all times pertinent herein, defendant City of Overland was a municipal corporation that acted by and through its elected and appointed policymakers and agents and acted under color of law in all respects herein.

15.    At all times pertinent herein, defendant City of Overland had a legal duty to operate, supervise, control and manage, and did operate, supervise, control, and manage the City Overland Police Department, including defendant Chief Laws, defendant Ringeisen, defendant Oakes, and defendant Stevens.

16.    All Defendants are sued in both their official and individual capacities for damages.

17.    The incident giving rise to this action occurred within St. Louis County, Missouri.

18.    On or about March 20, 2010, Kenneth Hamilton was at his residence located at 2612 West Milton Ave., Apartment A, Overland, Missouri 63114.

19.    On that date, defendant Overland Police Officers Ringeisen and Oakes responded to a call concerning an alleged "road rage" incident at which time the complainant provided the address and description of the other vehicle

involved in the incident.  At that time the complainant advised that he did not wish to file any formal complaint against the other driver but only wished to advise the police of the incident.

20.    Defendant Ringeisen and Oakes responded to the address of 2612 West Milton Ave., Apartment A, Overland, Missouri 63114, which belonged to decedent.  Ringeisen and Oakes knocked on the front door and after receiving no response, proceeded to the rear of the residence and observed decedent's vehicle which was equipped with emergency lights.

21.    Defendants Ringeisen and Oakes then obtained a computer check of the license plate which showed that the vehicle belonged to Plaintiffs' decedent.

22.    Defendant Stevens was at the station when the request for the license check was received and overheard the identity of the decedent and proceeded to the residence to assist defendants Ringeisen and Oakes.

23.    After defendants Ringeisen and Oakes obtained the computer check, they started to leave the premises when decedent opened the rear door while remaining in the doorway and defendants Ringeisen and Oakes advised of the road rage complaint and a discussion that escalated to an argument ensued between the officers and decedent.

24.    Defendant Stevens arrived and observed the verbal exchange between decedent and defendants Ringeisen and Oakes, which continued to escalate.

25.   During the verbal exchange between decedent and the Defendant Police Officers, at all times the decedent remained within the doorway of his own home.  Decedent was never a threat to any defendant Police Officer, and neither physically approached any defendant nor verbally threatened defendants Ringeisen, Oakes, or Stevens.

26.   During the verbal exchange, and without any justification, excuse, provocation or cause, defendant Ringeisen intentionally laid his hands on the decedent and either struck, punched, and/or pushed decedent backwards, causing decedent to fall down a flight of stairs within the decedent's own residence causing serious and substantial injuries including a massive head injury, which required immediate medical care and treatment.

27.   The open stair well was immediately behind the rear entrance doorway and readily visible to defendants Ringeisen, Oakes, and Stevens.

28.   Thereafter, defendants Ringeisen, Oakes, and Stevens observed and heard decedent fall down the steps.

29.   The intentional act of defendant Ringeisen in pushing or striking decedent and causing decedent to fall down the stairs of decedent's own home was an excessive and unnecessary application of force against the decedent by defendant Ringeisen and constituted a seizure of decedent by defendant Ringeisen.

30.   The intentional act of defendant Ringeisen in pushing or striking decedent and  causing decedent to fall down the stairs of decedent's own

home caused an injury to decedent that was immediately obvious to, or should have been immediately obvious to, both defendant Ringeisen, as well as to defendants Oakes and Stevens.

31.    Thereafter, defendant Oakes advised defendant Ringeisen to enter the premises to arrest decedent, while knowing full well that decedent had done nothing to provoke the assault nor given any cause to be taken into custody.

32.    Thereafter, defendant Ringeisen ignored this request and Ringeisen, Oakes, and Stevens failed to enter the premises to investigate decedent's medical status or ascertain his need for medical assistance or provide any medical assistance or take any action whatsoever to assist decedent. Defendants instead returned to their respective patrol cars and fled the scene either knowing that decedent had sustained serious and life threatening injuries and was in immediate need for medical attention or in reckless disregard to their knowledge that decedent had sustained serious and life threatening injuries that required medical attention.

33.    Thereafter, decedent's brother, Joseph Hamilton, who was awakened by the sound of decedent falling down the steps, investigated and found decent lying at the bottom of the stairs unconscious.  Joseph Hamilton then called 911 for emergency services.

34.    After fleeing the scene of defendant Ringeisen's assault on the decedent, Defendants Ringeisen, Oakes, and Stevens received a dispatch regarding an unresponsive person at decedent's residence and they each

responded to the dispatch and returned to the decedent's residence. However, at no time did any of these defendants advise anyone as to truthful and actual events that caused decedent to fall down the steps and sustain serious and life threatening injuries.

35.    Upon arrival, defendant Oakes and Ringeisen went to the front door and observed that decedent's residence was equipped with a video surveillance system that had video cameras in both the front and rear of the residence.

36.    Defendants Ringeisen and Oakes entered the premises and defendant Ringeisen inquired whether the surveillance system recorded and Joseph Hamilton showed Ringeisen the television monitor and the VCR and defendant Ringeisen ordered Joseph Hamilton to remove the video tape and Ringeisen confiscated the tape for the purpose of covering up and spoliating any evidence of his wrongdoing.  Defendant Ringeisen then left the premises and retuned to the Overland Police Station with the video tape.

37.    Defendant Oakes proceeded downstairs to the decedent's location and, for the first time, checked on the medical status of decedent and shortly thereafter, medical emergency personnel arrived and defendant Oakes left the scene and returned to the Overland Police Station.

38.    Defendant Stevens never entered the decedent's premises but returned to the station shortly after he had arrived.

39.   Upon his return to the police station, defendant Oakes prepared an Offense/Incident Report, Overland Police Complaint No. 10-03263, detailing a purposeful and intentionally false and fraudulent version of the initial response of the Overland Police to decedent's residence. This Official City of Overland Police Department report cited an alleged charge of "Road Rage/Aggressive Driving" against the decedent even though decedent was never cited or charged for this offense. Defendant Oakes further falsified the police report by omitting any reference to the assault of the decedent by defendant Ringeisen or the events that directly caused decedent to fall down the stairs and sustain the serious and fatal injuries that were caused by defendant Ringeisen.

40.   Upon his return to the police station, defendant Ringeisen prepared a purposeful and intentionally false and fraudulent City of Overland Police Department Offense/Incident Report, Complaint No. 10-03264, detailing his response the injury dispatch. Defendant Ringeisen intentionally falsified this police report by omitting the fact that he had confiscated the surveillance video tape from the decedent's premises. Defendant Ringeisen further reported that he checked the premises and found "no signs of forced entry" for the misleading, false and fraudulent purpose of lying about his own role in causing the injuries to the decedent and for his intent to indicate that someone other than defendant Ringeisen had broken in and assaulted the decedent Kenneth Hamilton. The police report was further falsified in that

defendant Ringeisen reporting that a "check of the outside of the residence also revealed nothing that would indicate an altercation of any kind," while knowing full well his altercation caused decedent to fall.    And while Ringeisen referenced that he had been at the premises previously that evening he intentionally failed to make any reference to his assault of decedent.

41.    After the defendant Police Officers returned to the police station, they advised their shift supervisor, Overland Police Officer Sergeant Kevin Goedde, of the incident wherein they had informed him that they had previously confronted Hamilton and that during the incident Kenneth Hamilton had fallen down the steps.  Sergeant Goedde reviewed the officers' Offense/Incident Reports and the only revision he requested was for defendant Ringeisen to add to the report that he had found no signs of forced entry.

42.    Upon his return to the police station, defendant Ringeisen purposefully and intentionally failed to properly log the confiscated video tape into evidence.  The video tape was later discovered in the desk of Overland Police Officer Sergeant Kevin Goedde and, upon information and belief, the tape did not show any images whatsoever, notwithstanding the fact that the video recording equipment at the residence was in fully operational condition and recording at the time the video tape was removed and turned over to defendant Ringeisen.

43. At no time during the events as described herein, was Kenneth Hamilton armed with any weapon, or a threat to the safety of himself or others. He had not committed any criminal offenses.

44. Defendant Officers Ringeisen, Oakes and Stevens had no warrant for the arrest of Kenneth Hamilton and no probable cause, no justification, no legal cause nor any valid excuse to seize the person of Kenneth Hamilton.

45. At all times during the events setforth above, the defendant Police Officers were engaged in a conspiracy and a joint venture. The individual officers conspired with and assisted each other in performing the various improper, illegal and unconstitutional actions described herein, and lent their physical presence and support and authority of their office as police officers to each other during said events.

46. As a direct and proximate result of the wrongful conduct of the defendants as described herein, and as a direct and proximate result of the serious and lift threatening injuries sustained by decedent on March 20, 2010, plaintiffs' decedent Kenneth Hampton died on or about March 25, 2010.

47. As a direct and proximate result of the wrongful, illegal and unconstitutional acts and conduct of the City of Overland Police Officer defendants Ringeisen, Oakes, and Stevens, and as a direct and proximate result of the failure of the Mayor, Chief of Police and City Council to manage, control and supervise the Police Officer defendants, decedent Kenneth Hamilton suffered the following injuries and damages:

a.     Violation of his constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from excessive and unnecessary force, to be free from an unreasonable search and seizure of his person, and to be free from behavior and conduct by Police Officers that shocks the conscience in their failure and refusal to provide necessary medical care;

b.     Loss of his life;

c.     Physical pain and suffering and emotional trauma and suffering, requiring the expenditure of money for medical treatment.

48.    The actions of defendants Ringeisen, Oakes, Stevens violated the following clearly established and well settled federal constitutional rights of Kenneth Hamilton:

a.     Freedom from the unreasonable seizure of his person guaranteed under the Fourth Amendment to the Constitution of the United States;

b.     Freedom from the use of excessive, unnecessary, unreasonable and unjustified force against his person as guaranteed by the Fourth Amendment to the Constitution of the United States;.

c.     Freedom from behavior and conduct by Police Officers that shocks the conscience in violation of the Fourteenth Amendment to the Constitution of the United States in the following respects: from their use of excessive force; from their failure to provide necessary medical care for

injuries that were caused by the Police when the need for such care was obvious; from their purposeful falsification of official police reports; and from their purposeful destruction of inculpatory evidence;

d.      Freedom from the failure of the policy makers of the City of Overland including the Mayor, Chief of Police and members of the City Council in violation of the Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States to properly manage, supervise, control and discipline the Police Department of the City of Overland.


## COUNT I – State Law Wrongful Death Claim Against Defendant Ringeisen

49.    Plaintiffs' hereby incorporate paragraphs 1-48 as if fully set forth herein.

50.    Plaintiffs bring this count on behalf of Kenneth Hamilton, Plaintiffs' decedent, as well as all persons entitled to recover under Mo. Rev. Stat. §537.080 et. seq., which is commonly known as Missouri "Wrongful Death Statute."

51.    Defendant Ringeisen owed Plaintiffs' decedent a duty:

a.      To use reasonable forces when interrogating and investigating Plaintiffs' decedent;

b.      To not be deliberately indifferent to Plaintiffs' decedent's safety and health needs;

    c.     To monitor Plaintiffs' decedent's health while in Defendant's custody;

    d.     To not cause Plaintiffs' decedent to die; and

    e.     To be aware of Plaintiffs' decedent's individualized medical needs;

    f.     To provide medical assistance and care to Plaintiffs' decedent.

    g.     To contact emergency medical personnel to provide medical care and treatment to Plaintiffs' decedent.

52.    Defendant Ringeisen breached the aforementioned duties as a result of the conduct as set forth herein, and therefore was negligent.

53.    Defendant Ringeisen was negligent in one or more of the following respects:

    a.     Failing to use reasonable forces when interrogating and investigating Plaintiffs' decedent;

    b.     Acting with deliberate indifference to Plaintiffs' decedent's safety and health needs;

    c.     Using excessive force while investigating and interrogating Plaintiffs' decedent;

    d.     Failing to be aware of Plaintiffs' decedent's individualized medical needs;

    e.     Failing to provide medical assistance or contact emergency medical personnel to provide care and treatment to Plaintiffs' decedent.

f. Causing Plaintiffs' decedent to die.

54. As a direct and approximate result of defendant Ringeisen's multiple negligent and intentional acts, Plaintiffs' decedent died, and Plaintiffs have forever lost and been deprived of the services, companionship, comfort, instruction, guidance, counsel, training, and support of the decedent; and Plaintiffs have further suffered other pecuniary losses by reason of decedent's wrongful death, including funeral expenses.

55. In addition, Plaintiffs seek recovery for such damages that decedent suffered before his death and for which he would have been entitled to recover had he lived.

56. Defendant Ringeisen knew or had reason to know that there was a high degree of probability that his conduct would result in severe injury to Plaintiffs' decedent, and the conduct of defendant Ringeisen was willful, wanton, and recklessly indifferent to the rights, safety and well-being of Kenneth Hamilton, and warrants an award of damages for aggravating circumstances in order to punish defendant Ringeisen, and to deter him and others from like conduct in the future.

WHEREFORE, Plaintiffs pray judgment against defendant Ringeisen for damages sustained by Kenneth Hamilton, and for damages sustained by themselves and others setforth in Mo. Rev. Stat. §537.040., for damages for aggravating circumstances, for attorneys' fees and their costs herein expended, and for such other and further relief as deemed just and proper.

## COUNT II – 42 USC 1983 Wrongful Death Claim Against
## Defendant Ringeisen

57.     Plaintiffs incorporate all allegations and averments of Count I, as if
setforth fully herein.

58.     Defendant Ringeisen's actions caused violations of Kenneth Hamilton's
constitutional rights in violation of the Civil Rights Act 42 U.S.C.§1983 et.
seq.

59.     As a direct and approximate result of defendant Ringeisen's actions,
Kenneth Hamilton died.

60.     Plaintiffs have forever lost and been deprived of the services,
companionship, comfort, instruction, guidance, counsel, training, and support
of the decedent; and Plaintiffs have further suffered other pecuniary losses by
reason of decedent's wrongful death, including funeral expenses, and
Plaintiffs seek all such recovery for all such injuries and damages under 42
U.S.C. Sec. 1983, including reasonable attorney's fees and expert witness fees
pursuant to §1988.

61.     In addition, Plaintiffs seek recovery for such damages that decedent
suffered before his death and for which he would have been entitled to recover
had he lived.

62.     The actions of defendant Ringeisen were recklessly indifferent to the
rights of Kenneth Hamilton.  Defendant Ringeisen inflicted fatal injuries and
then fled the scene leaving Kenneth Hamilton to die.  He did not administer

medical assistance, call for medical assistance, or even check on Hamilton's medical condition. Such conduct warrants an award of punitive damages to punish defendant Ringeisen and deter him and others from acting in like manner in the future.

WHEREFORE, Plaintiffs pray for judgment against defendant Ringeisen for actual and compensatory damages in an amount to be determined by a jury as fair and reasonable; for punitive damages, and for reasonable attorney's fees pursuant to 42 U.S.C.§1988 as well as costs and such other relief as deemed just and proper.

### COUNT III – State Law Wrongful Death Claim Against Defendant Oakes

63.   Plaintiffs' hereby incorporate paragraphs 1-48 as if fully set forth herein.

64.   Defendant Oakes owed Plaintiffs' decedent a duty:

    a.   To not be deliberately indifferent to Plaintiffs' decedent's safety and health needs;

    b.   To be aware of Plaintiffs' decedent's individualized medical needs;

    c.   To provide medical assistance and care to Plaintiffs' decedent.

    d.   To contact emergency medical personnel to provide medical care and treatment to Plaintiffs' decedent.

e.     To intervene on behalf of Plaintiffs' decedent to stop the violation of his constitutional rights.

65.   Defendant Oakes breached the aforementioned duties for the conduct as set forth herein, and therefore were negligent.

66.   Defendant Oakes was negligent in one or more of the following respects:

a.     Acting with deliberate indifference to Plaintiffs' decedent's safety and health needs;

b.     Failing to be aware of Plaintiffs' decedent's individualized medical needs;

c.     Failing to provide medical assistance or contact emergency medical personnel to provide care and treatment to Plaintiffs' decedent.

d.     Failing to intervene on behalf of Plaintiffs' decedent to prevent the violations of his constitutional rights.

67.   As a direct and approximate result of defendant Oakes' multiple negligent acts, Plaintiffs' decedent died, and Plaintiffs have forever lost and been deprived of the services, companionship, comfort, instruction, guidance, counsel, training, and support of the decedent; and Plaintiffs have further suffered other pecuniary losses by reason of decedent's wrongful death, including funeral expenses.

68.    In addition, Plaintiffs seek recovery for such damages that decedent suffered before his death and for which he would have been entitled to recover had he lived.

69.    Defendant Oakes, knew or had reason to know that there was a high degree of probability that his conduct would result in severe injury to Plaintiffs' decedent, and the conduct of defendant Oakes was willful, wanton, and recklessly indifferent to the rights, safety and well-being of Kenneth Hamilton, and warrants an award of damages for aggravating circumstances in order to punish defendant Oakes and to deter him and others from like conduct in the future.

WHEREFORE, Plaintiffs pray judgment against defendant Oakes for damages sustained by Kenneth Hamilton, and for damages sustained by themselves and others setforth in Mo. Rev. Stat. §537.040., for damages for aggravating circumstances, for attorneys' fees and their costs herein expended, and for such other and further relief as deemed just and proper.

## COUNT IV – 42 USC 1983 Wrongful Death Claim Against Defendant Oakes

70.    Plaintiffs incorporate all allegations and averments of Count III, as if setforth fully herein.

71.    Defendant Oakes' actions caused violations of Kenneth Hamilton's constitutional rights in violation of the Civil Rights Act 42 U.S.C.§1983 et. seq.

72.   As a direct and approximate result of defendant Oakes' actions, Kenneth Hamilton died.

73.   Plaintiffs have forever lost and been deprived of the services, companionship, comfort, instruction, guidance, counsel, training, and support of the decedent; and Plaintiffs have further suffered other pecuniary losses by reason of decedent's wrongful death, including funeral expenses, and Plaintiffs seek all such recovery for all such injuries and damages under 42 U.S.C. 1983, including reasonable attorney's fees and expert witness fees pursuant to §1988.

74.   In addition, Plaintiffs seek recovery for such damages that decedent suffered before his death and for which he would have been entitled to recover had he lived.

75.   The actions of defendant Oakes were recklessly indifferent to the rights of Kenneth Hamilton.   Defendant Oakes failed to intervene on behalf of Kenneth Hamilton permitting defendant Ringeisen to inflict fatal injuries.  He did not administer medical assistance, call for medical assistance, or even check on Hamilton's medical condition but instead fled the scene.   Such conduct warrants an award of punitive damages to punish defendant Oakes and deter him and others from acting in like manner in the future.

WHEREFORE, Plaintiffs pray for judgment against defendant Oakes for actual and compensatory damages in an amount to be determined by a jury as fair and reasonable; for punitive damages, and for reasonable

attorneys' fees pursuant to 42 U.S.C.§1988 as well as costs and such other relief as deemed just and proper.

## COUNT V– State Law Wrongful Death Claim Against Defendant Stevens

76.    Plaintiffs' hereby incorporate paragraphs 1-48 as if fully set forth herein.

77.    Defendant Stevens owed Plaintiffs' decedent a duty:

    a.    To not be deliberately indifferent to Plaintiffs' decedent's safety and health needs;

    b.    To be aware of Plaintiffs' decedent's individualized medical needs;

    c.    To provide medical assistance and care to Plaintiffs' decedent.

    d.    To contact emergency medical personnel to provide medical care and treatment to Plaintiffs' decedent.

    e.    To intervene on behalf of Plaintiffs' decedent to stop the violation of his constitutional rights.

78.    Defendant Stevens breached the aforementioned duties for the conduct as set forth herein, and therefore was negligent.

79.    Defendant Stevens was negligent in one or more of the following respects:

    a.    Acting with deliberate indifference to Plaintiffs' decedent's safety and health needs;

b.     Failing to be aware of Plaintiffs' decedent's individualized medical needs;

c.     Failing to provide medical assistance or contact emergency medical personnel to provide care and treatment to Plaintiffs' decedent.

d.     Failing to intervene on behalf of Plaintiffs' decedent to prevent the violations of his constitutional rights.

80.     As a direct and approximate result of defendant Stevens' multiple negligent acts, Plaintiffs' decedent died, and Plaintiffs have forever lost and been deprived of the services, companionship, comfort, instruction, guidance, counsel, training, and support of the decedent; and Plaintiffs have further suffered other pecuniary losses by reason of decedent's wrongful death, including funeral expenses.

81.     In addition, Plaintiffs seek recovery for such damages that decedent suffered before his death and for which he would have been entitled to recover had he lived.

82.     Defendant Stevens knew or had reason to know that there was a high degree of probability that his conduct would result in severe injury to Plaintiffs' decedent, and the conduct of defendant Stevens was willful, wanton, and recklessly indifferent to the rights, safety and well-being of Kenneth Hamilton, and warrants an award of damages for aggravating circumstances in order to punish defendant Stevens, and to deter him and others from like conduct in the future.

WHEREFORE, Plaintiffs pray judgment against defendant Stevens for damages sustained by Kenneth Hamilton, and for damages sustained by themselves and others setforth in Mo. Rev. Stat. §537.040., for damages for aggravating circumstances, for attorneys' fees and their costs herein expended, and for such other and further relief as deemed just and proper.

### COUNT VI – 42 USC 1983  Wrongful Death Claim Against Defendant Stevens

83.   Plaintiffs incorporate all allegations and averments of Count V as if setforth fully herein.

84.   Defendant Stevens' actions caused violations of Kenneth Hamilton's constitutional rights in violation of the Civil Rights Act 42 U.S.C.§1983 et. seq.

85.   As a direct and approximate result of defendant Stevens' actions, Kenneth Hamilton died.

86.   Plaintiffs have forever lost and been deprived of the services, companionship, comfort, instruction, guidance, counsel, training, and support of the decedent; and Plaintiffs have further suffered other pecuniary losses by reason of decedent's wrongful death, including funeral expenses, and Plaintiffs seek all such recovery for all such injuries and damages under 42 U.S.C. 1983, including reasonable attorney's fees and expert witness fees pursuant to §1988.

87.    In addition, Plaintiffs seek recovery for such damages that decedent suffered before his death and for which he would have been entitled to recover had he lived.

88.    The actions of defendant Stevens were recklessly indifferent to the rights of Kenneth Hamilton.   Defendant Stevens failed to intervene on behalf of Kenneth Hamilton permitting defendant Ringeisen to inflict fatal injuries.   He did not administer medical assistance, call for medical assistance, or even check on Hamilton's medical condition but instead fled the scene.   Such conduct warrants an award of punitive damages to punish defendant Stevens and deter him and others from acting in like manner in the future.

WHEREFORE, Plaintiffs pray for judgment against defendant Stevens for actual and compensatory damages in an amount to be determined by a jury as fair and reasonable; for punitive damages, and for reasonable attorney's fees pursuant to 42 U.S.C.§1988 as well as costs and such other relief as deemed just and proper.

### COUNT VII – 42 USC 1983 Claim Against Defendants City of Overland, Mayor Schneider, Police Chief Laws and Council Members May, Paul, Conlon, Ridolfi, Keller, Owensby, Jones and Dills

89.    Plaintiffs incorporate by reference all allegations and averments of Count I through VI, as if fully setforth herein

90.    Defendants City of Overland, Mayor Schneider, Chief Laws, and Council Members May, Paul, Conlon, Ridolfi, Keller, Owensby, Jones and

Dills owed Plaintiffs' decedent a duty to supervise, moniter, control and discipline the Overland Police Department in such a manner as to prevent injuries to his rights, safety, and/or well being. Defendants City of Overland, Mayor Schneider, Chief Laws, and the City Council members, in operating and by and through the operation of the Overland Police Department purports to provide training to its police officer employees in relation to the appropriate use of force, in proper techniques of investigation, in the reasonable and safe dealings with the public, in the apprehension of suspects and in the protection of the rights, safety, and well being of citizens and suspects.

91.     Prior to March 20, 2010, the City of Overland, the Mayor, the Chief of Police, and the members of the City Council developed and maintained unconstitutional policies or customs, or deliberately and purposefully failed to develop or maintain adequate policies or customs, of tolerating, encouraging and endorsing the violation and denial of constitutional rights of citizens by its Police Officers, including the deliberate indifference to the constitutional rights of persons in the City of Overland, which failure to supervise, control, discipline and manage the Overland Police Department was the moving force behind and did cause the violation of Plaintiffs' decedent's constitutional rights as set out herein, including the unlawful and excessive use of force, failing to intervene in the excessive use of force of its officers, failing to provide medical assistance to victims of excessive force who are in obvious

need of medical attention, and in the falsification of police reports and the spoliation and fabrication of evidence to cover up their own misconduct and wrong doing.

92.    It was the policy and/or custom of the City of Overland, the Mayor, Chief of Police and members of the City Council to inadequately screen, train, supervise, discipline, and control  and train its police officers, including the defendant officers, and is so doing thereby failing to adequately discourage further constitutional violations on the part of its' police officers. The City of Overland, the Mayor, the Chief of Police and the members of the City Council did not require appropriate supervision, control, management, in-service training or re-training of officers who were known to have engaged in police misconduct.

93.    The above described unconstitutional policy and customs, or the deliberate lack of constitutionally adequate policy and customs, demonstrated a deliberate indifference on the part of policy makers of the City of Overland, including the defendants herein, to the constitutional rights of persons within the City of Overland, and were themselves the moving force behind and the legal cause of the violations of Plaintiffs' decedent's rights alleged herein and the damages sustained by the plaintiffs herein, including but not limited to the cause of the decedent's death.

94.    The actions and omissions of the City of Overland and the Mayor, Chief of Police, and members of the City Council, were in reckless disregard

and/or deliberate indifference to the rights of Plaintiffs and other similarly situated individuals.

95.     Plaintiffs have forever lost and been deprived of the services, companionship, comfort, instruction, guidance, counsel, training, and support of the decedent; and Plaintiffs have further suffered other pecuniary losses by reason of decedent's wrongful death, including funeral expenses, and Plaintiffs seek all such recovery for all such injuries and damages under 42 U.S.C. 1983, including reasonable attorney's fees and expert witness fees pursuant to §1988, as well as damages under the Missouri Wrongful Death Statute.

WHEREFORE, Plaintiffs pray for judgment against defendant City of Overland for actual and compensatory damages in an amount to be determined by a jury as fair and reasonable; for punitive damages, to enter its order awarding reasonable attorney's fees pursuant to 42 U.S.C.§1988 as well as costs and such other relief as deemed just and proper.

<u>COUNT VIII- Negligent Hiring- City of Overland</u>

96.     Plaintiffs incorporate by reference all preceeding paragraphs, as if fully setforth herein.

97.     The City of Overland is and at all times relevant times herein, was responsible for the hiring, firing, duty assignments, and supervision of Overland Police Department officers and employees charged with enforcing

the law, making arrests, investigating potential crimes, and taking suspects into custody, and other tasks determined by the City of Overland.

98.   The City of Overland, at all pertinent times herein, knew that individuals hired as Overland Police Department employees would be placed in a position of power in relation to individuals they took into custody, and that the Overland Police Department employees who abused that power would cause deprivation of rights, injuries, and damages to those individuals in their custody.

99.   The City of Overland owed Plaintiffs' decedent and other similarly situated individuals in the City of Overland, a duty to investigate applicants for positions as police department employees to insure that no personnel hired would threaten the rights, safety, or well being of residents and citizens.

100.   It was the policy and/or custom of the City of Overland to inadequately and improperly investigate applicants for positions as police department employees and disregard information and evidence that individual police department applicants threatened the rights, safety, or well being of residence and citizens, and as a result of such policies and/or customs, police officers of the City of Overland, including the defendant officers, believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

101.   The City of Overland failed to properly investigate defendant Ringeisen prior to his hiring as an Overland Police Department employee.

102.   The City of Overland disregarded information and evidence that defendant Ringeisen was inadequate to serve as a police officer but posed a threat to the rights, safety, or well being of residence and citizens of the City of Overland.

103.   Due to his proclivity for unnecessary violence, cruel and unusual punishment, and denial of the protection of the rights, safety and well being of citizens within the City of Overland, defendant Ringeisen was not qualified to work as a law enforcement officer.

104.   The City of Overland knew, or by reasonable investigation should have known, that defendant Ringeisen had such proclivity, and thus if hired would pose a threat to the rights, safety and well being of those whom defendant Ringeisen came in contact with, interrogated, investigated, and/or took into custody.

105.   The City of Overland was responsible for the hiring and placement of defendant Ringeisen.

106.   The abuse, neglect, and mistreatment, and conduct committed by defendant Ringeisen, as set forth herein, was consistent with the proclivity for unnecessary violence, cruel and unusual punishment, and denial of medical and mental healthcare and other dangerous proclivities of defendant Ringeisen.

107.    As a proximate result of the City of Overland's customs and policies, and negligence in the hiring of defendant Ringeisen, Plaintiffs' decedent and Plaintiffs suffered injuries and damages as set forth herein.

108.    The actions and omissions of the City of Overland were taken with reckless disregard for the rights of Plaintiffs' decedent and Plaintiffs thereby justifying the imposition of punitive damages to punish defendant City of Overland and deter defendant and others from engaging in similar conduct in the future.

WHEREFORE, Plaintiffs pray for judgment against defendant City of Overland for actual and compensatory damages in an amount to be determined by a jury as fair and reasonable; for punitive damages, to enter its order awarding reasonable attorney's fees pursuant to 42 U.S.C.§1988 as well as costs and such other relief as deemed just and proper.

<u>COUNT VII- 42 USC 1983 By Plaintiffs For Interference with Family Relationship Against All Defendants</u>

109.    Plaintiffs incorporate by reference, all preceding allegations and averments as fully setforth herein.

110.    As a direct and proximate result of the aforesaid unconstitutional acts of al Defendants including the wrongful conduct of defendants Ringeisen, Oakes, and Stevens, decedent Kenneth Hamilton died.

111.    By causing his death, the Defendants deprived Plaintiffs of their familial relationship with their brother, Kenneth Hamilton.

112.   Under color of state law, the defendants intentionally and directly violated Plaintiffs' right to their familial relationship with Kenneth Hamilton, which was secured to them by the United States Constitution.

113.   Plaintiffs' right to their familial relationship with Kenneth Hamilton was clearly established.

114.   Plaintiffs' rights that the defendants violated were those of which a reasonable person would have known.

115.   Defendants were deliberately indifferent to Plaintiffs' rights.

116.   Plaintiffs have suffered damages.

117.   Plaintiffs are therefore entitled to damages and the recovery of litigation costs, including reasonable attorney fees pursuant to 42 U.S.C.§ 1988.

WHEREFORE, Plaintiffs pray for judgment against all defendants for actual and compensatory damages in an amount to be determined by a jury as fair and reasonable; for punitive damages, to enter its order awarding reasonable attorney's fees pursuant to 42 U.S.C.§1988 as well as costs and such other relief as deemed just and proper.

### COUNT VIII- 42 USC 1983 By Plaintiffs Against Defendants Mayor, Police Chief, and members of the City Council For Failure to Train, Supervise and Control

118.   Plaintiffs incorporate by reference all preceding paragraphs as if fully setforth herein.

119.   The City of Overland, Mayor, Police Chief and City Council are liable

for the violation of Plaintiffs' constitutional rights under the Fourth, Eighth

and Fourteenth Amendments, in that:

a. There exist within the City of Overland's Police Department

customs, practices, and usages so pervasive as to constitute

department policy, and one or more of these policies, customs,

practices, and usages caused the violation of Plaintiffs' constitutional rights;

and

b. The City of Overland, Mayor, Police Chief and City Council are

vested with the duty and the authority to train, supervise, discipline, and

otherwise control the officers of the City of Overland Police Department, and

the City and other defendants have failed to so train, supervise, discipline,

and otherwise control the officers of the Overland Police Department, which

itself caused the violation of Plaintiffs' constitutional rights.

120.   As a direct and proximate result of the policies, customs, practices,

and usages of the City of Overland Police Department and the City and other

defendants' failure properly to train, supervise, discipline, and otherwise

control the officers of the Overland Police Department, Plaintiffs suffered the

damages referred to herein, including the severe and permanent injuries and

damage to the decedent, leading to his death, as well as other damages to

decedent and the plaintiffs' constitutionally protected civil rights, including

liability for special damages in the form of medical expenses and may suffer

additional special damages in the future in an amount which cannot yet be determined.

121.   As a direct and proximate result of the policies, customs, practices, and usages of the City of Overland Police Department and the City and others' failure properly to train, supervise, discipline, and otherwise control the officers of the Overland Police Department, Plaintiffs suffered damages and injuries.

122.   If Plaintiffs prevail, they are entitled to an award of attorney's fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiffs pray for judgment against all defendants for actual and compensatory damages in an amount to be determined by a jury as fair and reasonable; enter its order awarding reasonable attorney's fees pursuant to 42 U.S.C.§1988 as well as costs and such other relief as deemed just and proper.

## COUNT XI- 42 USC 1983 By Plaintiffs Against All Defendants For Violation of Plaintiffs' Right to Substantive Due Process

123.   Plaintiffs incorporate by reference all preceding paragraphs as if fully setforth herein.

124.   As a direct and proximate result of the aforesaid wrongful and unconstitutional acts set out by all defendants, including the wrongful

conduct of defendants Ringeisen, Oakes, and Stevens, decedent Kenneth Hamilton died.

125.   Plaintiffs' decedent and the Plaintiffs herein, had a right under the law to substantive due process and to be free from arbitrary, outrageous and purposeful misconduct by governmental officials, including the defendants herein.

126.   By wrongfully causing his death, failing to train and supervise the defendant Police Officers, by submitting and tolerating the submission of false and fraudulent police reports, by hiding and concealing evidence and by falsifying evidence, by failing to provide necessary medical care to the decedent, and by covering up the true facts, the Defendants deprived Plaintiffs of their right to substantive due process.

127.   The wrongful conduct of all defendants in causing the denial of the guaranteed constitutional rights of the plaintiffs herein shocks the conscience.

128    Under color of state law, the defendants intentionally and directly violated Plaintiffs' right to substantive due process, which was secured to them by the United States Constitution.

129    Plaintiffs' right to substantive due process was clearly established.

130.   Plaintiffs' rights that the defendants violated were those of which a reasonable person would have known.

131.   Defendants were deliberately indifferent to Plaintiffs' rights.

132.   Plaintiffs have suffered damages.

133.   Plaintiffs are therefore entitled to damages, punitive damages and the recovery of litigation costs, including reasonable attorney fees pursuant to 42 U.S.C.§ 1988.

WHEREFORE, Plaintiffs pray for judgment against all defendants for actual and compensatory damages in an amount to be determined by a jury as fair and reasonable; enter its order awarding reasonable attorney's fees pursuant to 42 U.S.C.§1988 as well as costs and such other relief as deemed just and proper.

Respectfully submitted,

KOLKER & GERMEROTH, LLC

/S/ Thomas P. Germeroth
Thomas P. Germeroth, #69096
7730 Carondelet Avenue, Suite 310
Clayton, Missouri  63105
314-727-4529 (telephone)
314-727-8529 (facsimile)
Attorneys for Plaintiff

JEROME L. LEFTON LAW OFFICE

/S/ Daniel L. Lefton
DANIEL L. LEFTON
1015 Locust Street, #808
St. Louis, MO 63101
(314)231-1166 (telephone)
(314)231-5852
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing was served by electronic service and by mailing a copy by US Mail postage prepaid this ____ day of_____, 2010 to:

Robert J. Krehbiel
KING, KREHBIEL, HELLMCIH, HACKING
& BORBONUS, LLC
2000 S. Hanley Rd
St. Louis, MO 63144-1524
*Attorney for Defendant City of Overland*

Rick Barry, III
LAW OFFICES OF RICK BARRY, P.C.
2726 S. Brentwood Blvd.
St. Louis, MO 63144
*Attorney for Defendant Andrew Ringeisen*

                                          /S/ Thomas P. Germeroth